UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BONNIE A. ROEDER,          )
                                )
       Plaintiff,         )
                                )
v.                             )       Case No.:     4:16-CV-00016-RWS
                                )
CITY OF ST. PETERS, *et al.*    )
                                )
       Defendants.     )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Comes now Plaintiff Bonnie A. Roeder, by counsel W. Bevis Schock and Hugh A.

Eastwood, and for her Memorandum in Opposition to Defendants' Motion to Dismiss states:

### PARTIES

Plaintiff Bonnie A. Roeder is an individual and Defendants are the City of St. Peters and

City of St. Peters Administrator Greg M. White.

### PROCEDURAL HISTORY

Roeder filed her Petition in the Circuit Court of St. Charles County, Missouri.

Defendants removed to this federal court.  Defendants have now filed a "Motion to Dismiss",

Doc No. 12, and a Memorandum in Support, Doc No. 13.  The opening paragraph of

Defendants' Motion states that it is brought pursuant to Fed.R.Civ.P. 12(b)(6) which allows

dismissal for "failure to state a claim upon which relief can be granted".

This is Plaintiff's Memorandum in Opposition.

### PRELIMINARY PROCEDURAL QUESTION

Defendants at 5 of their Memorandum in Support ask the court to take judicial notice of

certain City ordinances, (particularly the General Penalty Ordinance, § 100.060), the Missouri

Supreme Court Rules and the Trial Court's September 5, 2013 decision in St. Charles County

Circuit Court, City of St. Peters v. Roeder, Case No. 1311-MU00010.

     While Plaintiff acknowledges that the copies are true and accurate and that Defendants'

copy of the City of St. Peters' municipal code sections is properly certified, Plaintiff notes to the

Court that under the letter of Fed.R.Civ.P. 12(d) to the extent the Court examines materials

outside the pleadings then the Court must treat the Motion as one for Summary Judgment under

Fed.R.Civ.P. 56.

     This Court is therefore faced with the preliminary question of whether to treat this

Motion as a Motion to Dismiss or a Motion for Summary Judgment.

     As cited by Defendants, the degree to which the court may examine records outside the

pleadings in connection with a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss is discussed in

*Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). The Court there stated:

> A court generally may not consider materials outside the pleadings when deciding
> a motion to dismiss for failure to state a claim or for judgment on the pleadings.
> Courts may, however, consider some materials that are part of the public record or
> do not contradict the complaint, as well as materials that are necessarily embraced
> by the pleadings. For example, courts may consider matters of public record,
> orders, items appearing in the record of the case, and exhibits attached to the
> complaint. In this case, the district court considered the underlying state court
> decisions because they were matters of public record. (internal quotations and
> citations omitted)

     Plaintiff has no interest in standing on ceremony, and therefore Plaintiff states that she

believes the entire municipal code of the City of St. Peters is a "matter of public record", and that

so are the Missouri Rules and the decisions of its courts. Plaintiff also notes that the other

material facts Defendants have raised in their Motion to Dismiss are actually already asserted in

Plaintiff's Complaint, Doc No. 3, (originally a "Petition" in state court; hereafter referred to for

simplicity sake as a "Complaint), and none of Defendants' facts contradict the Complaint.

Plaintiff therefore waives any objection she might have to the Court considering the entire municipal code of the City of St. Peters, the Missouri Rules and the decisions of the Missouri courts in connection with this Motion. Plaintiff further waives any objection she might have to the court handling Defendants' Motion as a Motion to Dismiss. See also footnote 9 of *Jessen*, where the court notes Plaintiff's waiving of such an objection in favor of treating a Motion to Dismiss which raises facts outside the Complaint as a Motion to Dismiss and not a Motion for Summary Judgment.

Plaintiff will hereafter presume the Court will treat Defendants' Motion as a Motion to Dismiss.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6) ] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010), citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

## FACTS

Plaintiff's Complaint contains undersigned counsel's best effort at "a short and plain statement of the facts" pursuant to Missouri Supreme Court Rule 55.05. Defendants in turn have provided a version of the facts in their Memorandum in Support of their Motion at p. 3.

Plaintiff will now present those facts which Plaintiff believes are necessary to resolve the Defendants' Motion. All paragraph references are to Plaintiff's Complaint.

_____

At the relevant time the City had in place a red light camera ticket program, para. 10.

On June 7, 2012 at 6:53 a.m. Roeder ran a red light, para. 12, and her conduct was caught by a camera, para. 13. The City sent Roeder a Notice of Violation with a demand for payment of $110.00, para. 14. Roeder did not respond, para. 15.

The City sent Roeder a follow up notification to appear in municipal on July 31, 2012 to respond to the ticket,[1] para. 12. Roeder did not appear, para. 17.

The City then sent Roeder another notice, this time to appear on September 11, 2012. Again Roeder did not appear. paras. 18-22.

That notice was untitled, para. 18.

Court Administrator White then signed a "Complaint, Affidavit and Information" asserting that Roeder did "unlawfully FAIL TO APPEAR in the St. Peters Municipal Division of the 11th Judicial Circuit Court of St. Charles County in response to a notice of summons number(s)

STP021020     Red Light Camera

in violation of Ordinance # 442 of the City of St. Peters, Missouri", para. 23.

Missouri Rule 37.35(a)(4) requires that a municipal Information "Cite the chapter and section of the ordinance alleged to have been violated and the chapter and section providing the penalty or punishment", para. 25.

Ordinance 442, in effect at that time, duly enacted on October 26, 1978 contains no section or subsection making Failure to Appear an offense, para. 30.

On October 18, 2012 the City Municipal Judge signed and the City of St. Peters court issued warrant No. 20121561 for the arrest of Bonnie A. Roeder, para. 27.

---

[1] Plaintiff's Complaint states the year as 2015, but that is a clerical error. The event occurred in 2012.

The City then had a policy of processing and seeking Failure to Appear warrants when subjects did not come to court in response to a Notice of Hearing on a red light camera ticket, para. 33. The reason for that policy, summarizing, was that [t]he City wished to aggressively pursue revenue from its red light camera ticket program by causing citizens to fear arrest all the while skirting any concerns about the legality of the red light camera ticket program itself, para. 38.b, and [t]he City wished to use the publicity surrounding the arrests of individuals to intimidate citizens into paying their red light camera tickets instead of ignoring them, and wished to make it clear that even though other municipalities were ignoring those who did not pay, the City of St. Peters would have those who did not pay arrested – even though the arrest was not for the underlying crime, para. 38.c.

Further, on inference it was the City's deliberately chosen policy not to seek warrants on the underlying charge of red light camera ticket violation because the City had doubts about the legality of the red light camera ticket program, and the City wanted the reputation for being very tough on non-paying subjects even while other municipalities had the reputation of not pursuing non-paying subjects all the while skirting any concerns about the legality of the red light camera ticket program itself, and all to increase revenue, para. 76.

On November 5, 2012 Roeder was arrested on the warrant, paras. 39-41. She was in custody approximately three hours, para. 45 and then made bail in the amount of $210.00, para. 46.

The City proceeded to prosecute Roeder in the County of St. Charles Circuit Court, Case No. 1311-MU00010 (1) on the red light camera ticket, and (2) on the charge of Failure to Appear, , para. 48.

The case came on for jury trial on September 4, 2013, para. 49. At the close of the evidence upon inquiry from the Trial Judge the City's attorney acknowledged that the City had no Ordinance making Failure to Appear an offense, para. 50. When the Trial Judge learned that there was no City of St. Peters Ordinance making Failure to Appear an offense, the Trial Judge formally acquitted Roeder of that charge, para. 51.

The action of Defendants Court Administrator White in writing "in violation of Ordinance 442 of the City of St. Peters, Missouri" on the "Complaint, Affidavit and Information" was in violation of Rule 37.35(a)(4) requiring an Information to "Cite the chapter and section of the ordinance alleged to have been violated and the chapter and section providing the penalty or punishment", para. 57.

Court Administrator White's failure to follow the requirement in Missouri Rule 37.35(a)(4) to cite the chapter and section led to the arrest of Roeder, because if Court Administrator White had followed the rule or attempted to follow the requirement to cite the chapter and section he would have known that Ordinance 442 did not contain a chapter and section making Failure to Appear an offense, para 58.

**RESPONSE TO DEFENDANTS' ASSERTION THAT**
**FAILURE TO APPEAR IS UNLAWFUL UNDER CITY ORDINANCE**

The first portion of Defendants' Motion to Dismiss asserts that the arrest of Plaintiff was lawful because it was allowed either by a broad reading of the City' General Penalty Ordinance, § 100.060, or by Missouri Rule 37.44. This portion is not directed to any specific Count of the Complaint.

Let us examine those provisions one at a time.

1.      General Penalty Ordinance.

6

Only subsection A of the General Penalty Ordinance is relevant. That subsection reads in total:

A.  Except as hereinafter provided, whenever in this Code or in any other ordinance of the City or in any rule, regulation or order promulgated pursuant to such Code or other ordinance of the City, any act is prohibited or is made or declared to be unlawful or an offense, ordinance violation or a misdemeanor, or whenever in such Code or in such other City ordinance, rule, regulation or order, the doing of any act is required or the failure to do any act is declared to be unlawful, where no specific penalty is provided therefor, the violation of any such provision of this Code or of any other ordinance of the City or of any rule, regulation or order promulgated pursuant to such Code or other City ordinance shall be punished by a fine not exceeding five hundred dollars ($500.00), or by imprisonment for a period of not exceeding ninety (90) days, or by both such fine and imprisonment.

Plaintiff suggests that the subsection may be elided to be as in favor of Defendants as possible as follows:

…whenever in this Code…or in any order promulgated pursuant to such Code, any act is prohibited or is made or declared to be unlawful or an offense…, or whenever in such Code or…order, the doing of any act is required or the failure to do any act is declared to be unlawful, where no specific penalty is provided therefore, the violation of any such provision of this Code…or of any order promulgated pursuant to such Code…shall be punished by a fine not exceeding five hundred dollars…or by imprisonment for…90…days or by both.

(The court will recall that Ordinance 442, referred to in the summons, contains no section or subsection making Failure to Appear an offense, para. 30 of the Complaint and assumed as true and, also, not contradicted by Defendants).

The problem Defendant faces is that nowhere in the Code at that time was there any provision making Failure to Appear an "offence", "prohibited", or "unlawful". Thus the language "promulgated pursuant to such Code" and "whenever in such Code or…order, the doing of any act is required or the failure

7

to do any act is declared to be unlawful" does not bootstrap Failure to Appear into being an offense covered by the General Penalty Ordinance.

2.      Missouri Rule 37.44

The Rule applies to municipal Ordinance violations and reads:

> A summons may be served by:
> (a)     The clerk mailing it to defendant's last known address by first class mail; or
> (b)     An officer in the manner provided by Rule 54.13 or Rule 54.14.
> If the defendant fails to appear in response to a summons and upon a finding of probable cause that an ordinance violation has been committed, the court may issue an arrest warrant.

The problem Defendants face here is that under the language of the Rule the court's right to issue an arrest warrant is dependent on two things, first service of the notice, and second upon a finding of probable cause that an ordinance violation has been committed.  While Plaintiff concedes the first, Plaintiff denies the second.  There was no ordinance violation committed because Failure to Appear is not illegal so there can have been no lawful finding that "probable cause that an ordinance violation has been committed."

Plaintiff also notes that the idea that the Missouri Rules can define a crime under municipal law is novel.  Defendants cite no cases in favor of the proposition.  Plaintiff suggests that is because there are no cases in support of the proposition.

Defendants' position as stated on p. 7 of their Memorandum in Support is that those "citations identify a violation for Failure to Appear under Rule 37.44 and § 100.060, City Code; the charge of Failure to Appear and the warrant that issued are supported by law.

Respectfully, Plaintiff suggests that is just not the case.

8

Also, in Defendants' case, *Murray v. City of Sioux Falls*, 867 F.2d 472 (8th Cir. 1989), there was an Ordinance requiring snow removal and the 42 U.S.C. 1983 Plaintiff said location of the penalty provision in a "general penalty" instead of in the Ordinance itself invalidated the Ordinance. Here in contrast, it was the conduct itself which was not illegal. Therefore *Murray* in inapplicable.

Failure to Appear was no crime in the City of St. Peters at that time and therefore her arrest pursuant to the warrant violated her Fourth Amendment right to be free of unlawful arrest.

### RESPONSE TO DEFENDANTS' ASSERTION THAT
### CITY ADMINISTRATOR WHITE HAS NO LIABILITY

### COUNT I

### Introduction

The Court will recall that Plaintiff's allegation against Administrator White is that after Roeder responded to neither (1) the initial Notice of Violation and Demand for Payment, (2) the Notice to appear on July 31, 2012, nor (3) the mailing requiring her to appear on September 11, 2012:

> Court Administrator White then swore out a "Complaint, Affidavit and Information" asserting that Roeder did "unlawfully FAIL TO APPEAR in the St. Peters Municipal Division of the 11th Judicial Circuit Court of St. Charles County in response to a notice of summons" number(s)
>
> STP021020     Red Light Camera
>
> in violation of Ordinance # 442 of the City of St. Peters, Missouri, para. 23.

In the interest of clarity, Plaintiff emphasizes that Administrator White did not sign a "Complaint, Affidavit and Information" related to the underlying red light camera ticket -

9

Administrator White signed a "Complaint, Affidavit and Information" over Roeder's Failure to Appear in Court. In the course of the litigation over this matter Plaintiff has referred to the switch of focus from the underlying conduct of running a light to Failure to Appear as "bootstrapping". (Perhaps the City had concern it might not be wise to issue warrants for failing to answer Notices of Violation for the camera violation, because, as eventually occurred, the Missouri Supreme Court might throw out the red light camera tickets altogether, see *City of St. Peters v. Roeder*, 466 S.W.3d 538 (Mo. 2015), *Tupper v. City of St. Louis*, 468 S.W.3d 360 (Mo. 2015) and *City of Moline Acres v. Brennan*, 470 S.W.3d 367 (Mo. 2015)).

## Probable Cause

Defendants' first argument against liability for Administrator White, p. 8 of Defendants' Memorandum in Support, is that Administrator White did have probable cause to sign the "Complaint, Affidavit and Information" because Roeder had committed the ordinance violation of Failure to Appear and so there could be no violation of a constitutional right to be free of unlawful arrest.

Plaintiff incorporates her arguments in the section above that, in fact, because Failure to Appear was not illegal in the City at the time, there could have been no probable cause to believe that Roeder committed the ordinance violation of Failure to Appear. Therefore there indeed was a violation of her Fourth Amendment constitutional right to be free of unreasonable seizure of her person.

## Qualified Immunity

Plaintiff will now address Defendants' qualified immunity argument at p. 9. This is the section where Defendants assume that this Court has found that the City of St. Peters had no law making Failure to Appear a violation. Defendants write at that page:

10

Even if this Court finds that § 100.060, City Code, and Mo.Sup.Ct.R. 37.44 does not penalize failing to appear, White's conduct does not violate any "clearly established law". No court has declared that § 100.060 cannot be applied to penalize the conduct prohibited under Rule 37.44; no court has declared that the City has no law prohibiting Failure to Appear.

As will be discussed below, this precise fact situation, where an application for a warrant was made despite the lack of probable cause (or even arguable probable cause), was ruled on in Plaintiff's favor by the United States Supreme Court twenty years ago in *Malley v. Briggs*, 475 U.S. 335, 345-46 (1986).

But let us take it from the top. The parameters to determine qualified immunity are as follows.

Under well-established law, federal qualified immunity shields an officer from a suit for damages if a reasonable officer could have believed his or her conduct to be lawful under clearly established law and the information he or she possessed. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). Stated in the reverse, "the contours of the right must be sufficiently established that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Government officials are entitled to qualified immunity "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Sanders v. City of Minneapolis,* 474 F.3d 523, 526 (8th Cir. 2007). Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law. *Greiner v. City of Champlin,* 27 F.3d 1346, 1352 (8th Cir. 1994).

The standard for assessing qualified immunity is one of "objective legal reasonableness." *Winters v. Adams,* 254 F.3d 758, 766 (8th Cir.2001) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982)). Historically the first question was whether, viewing the facts in the light most

favorable to the party asserting the injury, the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part, Pearson v. Callahan,* 555 US 233 (2009). If the first question was answered in the affirmative, the second question was whether the right violated was clearly established. *Id.* In *Pearson,* the Supreme Court adjusted this procedure so that courts now have the discretion to choose to evaluate the second question before deciding the first question. In any case, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier,* 533 U.S. at 202.

"Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." *Winters,* 254 F.3d at 766.

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant,* 502 U.S. 224, 228 (1991).

Plaintiff suggests that Defendant's argument examines the wrong question. The question is not whether a court had declared that the City's General Penalty Ordinance failed to make Failure to Appear a violation, or even whether a court had declared that the City's Ordinances in toto failed to make Failure to Appear a violation. The question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted", *Saucier v. Katz,* 533 U.S. 194, 202 (2001). More specifically, the proper inquiry is whether it would have been clear to a reasonable court administrator that (1) an Ordinance, in this case no. 442, which contains no provision at all regarding Failure to Appear, cannot be the basis for arrest for Failure to Appear and (2) a General Penalty Ordinance which only refers to the rest of the Code as a

source of conduct defined as illegal when the rest of the Code has no provision making Failure to Appear illegal cannot be the basis for arrest for Failure to Appear.

Plaintiff, of course, answers both questions in the negative, particularly because of Administrator White's post in the City. He must be judged as a reasonable court administrator, which one may reasonably conclude is a position for which there is required a working knowledge of both of the City's ordinances' related to court administration and all procedural issues related to Defendants.

Plaintiff also notes that a court administrator, like a police officer in the more common fact scenario, is presumed to know the law. See *Messerschmidt v. Millender,* 132 S.Ct. 1235 (2012), declining to overrule the reasonably well-trained officer standard set forth in *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *see also Saterdalen v. Spencer,* 725 F.3d 838, 841; *Small v. McCrystal,* 708 F.3d 997, 1006 (8th Cir. 2013). See also *Anderson v. Creighton,* 483 U.S. 635, 639 (1987), and see *Heien v. N. Carolina*, 135 S. Ct. 530, 539-541 (2014) for general discussion of need for confusion to justify qualified immunity, and a Kagan concurrence explicitly requiring ambiguity in the law to excuse mistake of law.

The right to be free of arrest is well established under the Fourth Amendment. Two years ago in *Bechman v. Magill*, 745 F.3d 331, 334 (8th Cir. 2014) the court summarized the law in the context of a warrantless arrest, where the analysis is essentially the same as here where there was a warrant but no probable cause for the warrant:

> It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments.' " *Walker v. City of Pine Bluff,* 414 F.3d 989, 992 (8th Cir.2005) (quoting *Hannah v. City of Overland, Mo.,* 795 F.2d 1385, 1389 (8th Cir.1986)). "Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause ... that is, whether the officer should have known that the arrest violated plaintiff's clearly

13

established right." ' *Id.* (omission in original) (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.1996)).

Here Administrator White signed the "Complaint, Affidavit and Information" and so he was in the position of the officer in *Magill*. He based his signature on his knowledge of the facts and the law. Unfortunately, he either did not know the law or ignored the law. No reasonable clerk would have thought there was probable cause that a violation of a "failure to appear" charge had occurred.

Finally, of greatest importance and as referenced above, the lack of qualified immunity for the specific fact situation in here in which an officer applies for a warrant without probable cause was settled in Plaintiff's favor twenty years ago in *Malley v. Briggs*, 475 U.S. 335, 345-46 (1986):

> In *United States v. Leon,* 468 U.S. 897 (1984) we stated that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment. (Some citations and quotations omitted).

This situation here is the same as the situation there. Administrator White failed to exercise reasonable professional judgment and so is not entitled to qualified immunity.

Plaintiff will conclude this section with Defendants' case, *Saterdalen v. Spencer*, 725 F.3d. 838, 839 (8th Cir. 2013). That was a sex offender case turning on the definition of "primary address". The sex offender lived in Minnesota but normally spent the winter in Belize.

The court found the definition "primary address" to be ambiguous and undefined by Minnesota courts and so gave qualified immunity to the officer who swore out the warrant against the sex offender for failing to register in Belize.

This situation is different in that there was no provision in the ordinances at all making Failure to Appear against the law. No law at all is different in kind than an ambiguous law. Plaintiff notes that she does not have to rely solely on the fact that Ordinance 442, the Ordinance Administrator White cited, has no such provision. There is no such provision anywhere in the City's Code.

### Intervening Cause

Defendant next argues at 11 that the judge's signature on the warrant constitutes a "sufficient intervening cause" to cut off Administrator White's liability. Plaintiff takes the court back to *Malley v. Briggs*, 475 U.S. 335, 345-46 (1986) for Plaintiff believes that resolves the "intervening cause" argument in her favor:

> We also reject petitioner's argument that if an officer is entitled to only qualified immunity in cases like this, he is nevertheless shielded from damages liability because the act of applying for a warrant is *per se* objectively reasonable, provided that the officer believes that the facts alleged in his affidavit are true. Petitioner insists that he is entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant. This view of objective reasonableness is at odds with our development of that concept in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

Defendants counter that *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) states that "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." Plaintiff suggests to the court that the full paragraph in which that sentence appears actually contradicts Defendants' interpretation:

Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith." *United States v. Leon,* 468 U.S. 897, 922–9231984). Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley,* 475 U.S., at 341. The "shield of immunity" otherwise conferred by the warrant, *id.,* at 345, 106 S.Ct. 1092, will be lost, for example, where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S., at 923, (internal quotation marks omitted).

As the court can see, the intervening cause argument, sometimes called a "shield of immunity" argument, fails if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable". That is exactly the situation here, and therefore the intervening cause argument also fails.

Defendants' case, *Cox v. City of Maryland Heights*, 2011 WL 4055780, *10 (E.D. MO, September 13, 2011), was a situation in which the Prosecuting Attorney signed the warrant application. A Prosecuting Attorney's signature is not alleged in Plaintiff's Petition, Defendants have offered no evidence in support of such an allegation, and Plaintiff informs the court that she believes in good faith that the Prosecuting Attorney did not in fact sign any document related to the warrant. *Cox* is therefore irrelevant.

Similarly, Defendants' case *Townes v. City of New York*, 176 F.3d 138, 147 (2nd Cir.1999) is an amount of bail case and since the amount of bail is not at issue in this case *Townes* is irrelevant pursuant to identical logic.

## RESPONSE TO DEFENDANTS' ASSERTION THAT CITY ITSELF HAS NO *MONELL* LIABILITY

## COUNT II

16

Plaintiff's Count II is based on her allegations that "The City then had a policy of processing and seeking Failure to Appear warrants when subjects did not come to court in response to a Notice of Hearing on a red light camera ticket, Complaint, para. 33, at the close of the evidence at trial "the City's attorney acknowledged that the City had no Ordinance making Failure to Appear an offense", para. 50, and the reason for this policy was that the City wished to aggressively pursue revenue from its red light camera ticket program by causing citizens to fear arrest all the while skirting any concerns about the legality of the red light camera ticket program itself, para. 38.b, and the City wished to use the publicity surrounding the arrests of individuals to intimidate Roeder and other citizens into paying their red light camera tickets instead of ignoring them, and wished to make it clear that even though others ignored those who did not pay, the City of St. Peters would have those who did not pay arrested – even though the arrest was not for the underlying crime, para. 38.c.

Defendants have not filed an Answer and this is a Motion to Dismiss, and so these allegations are assumed as true. (Plaintiff acknowledges that the discovery process will be challenging and that Plaintiff at trial may rely on inferences).

Defendants' first argument is that there was no constitutional violation in the issuing of the warrant and subsequent arrest. Plaintiff assumes the court has already rejected the supposition of that argument and so Plaintiff will move on to Defendants' next argument. The next argument is that there is no *respondeat superior* in 42 U.S.C. 1983 law. Plaintiff agrees with that statement of law, but Plaintiff notes that nowhere in her Complaint has she asserted *respondeat superior* liability, so that argument does not address any issue in the case. Defendants' next argument relates to failure to train and failure to supervise. Similarly, Plaintiff

17

makes no failure to train or failure to supervise arguments in her Complaint, and so again those arguments do not address any issue in the case.

Up through the end of that section of their Memorandum in Support at p. 15 Defendants make no other arguments in support of dismissing Count II, *Monell* liability. Therefore if Plaintiff's underlying constitutional claim in Count I against Administrator White survives Defendants' Motion to Dismiss, her claim pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690–95 (1978) in Count II should also survive Defendants' Motion to Dismiss.

Plaintiff does, of course, assert that Count II makes out a claim under *Monell* because Count II for municipal liability is based on the policy of the City to issue warrants in red light camera ticket cases for Failure to Appear even though Failure to Appear was not a crime in the City of St. Peters at the time. Plaintiff has thus fulfilled the policy requirement of *Board of Comm'rs v. Brown*, 520 U.S. 397, 400 (1997).

## RESPONSE TO DEFENDANTS' ASSERTION THAT PLAINTIFF HAS NO PROCEDURAL DUE PROCESS CLAIM

## COUNT III

### Introduction

In her Count III against Administrator White and the City Plaintiff asserts that the prosecution of Plaintiff for Failure to Appear when there was no Ordinance making Failure to Appear a crime violated her right to procedural due process. As stated in the Facts section above, "at the close of the evidence upon inquiry from the Trial Judge the City's attorney acknowledged that the City had no Ordinance making Failure to Appear an offense, para. 50", and "when the Trial Judge learned that there was no City of St. Peters Ordinance making Failure to Appear an offense, the Trial Judge formally acquitted Roeder of that charge, para. 51".

18

Plaintiff further alleges "[o]n inference it was the City's deliberately chosen policy not to seek warrants on the underlying charge of red light camera ticket violation because the City had doubts about the legality of the red light camera ticket program, and the City wanted the reputation for being very tough on non-paying subjects even while other municipalities had the reputation of not pursuing non-paying subjects all the while skirting any concerns about the legality of the red light camera ticket program itself, all to increase revenue", para. 76.

That there is a right to procedural due process is undisputed, but Plaintiff acknowledges that it can be slippery and a Plaintiff must meet the requirements. Plaintiff will first outline the right and its limitations, and then apply the law to these facts.

In *Albright v. Oliver*, 510 U.S. 266, 282 (1994), Justice Kennedy wrote, concurring:

> To be sure, we have held that a criminal rule or procedure that does not contravene one of the more specific guarantees of the Bill of Rights may nonetheless violate the Due Process Clause if it " 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Medina v. California,* 505 U.S. 437, 445 (1992) (quoting *Patterson v. New York,* 432 U.S. 197, 202 (1977)).

Under *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. In footnote 11 the court stated: "Although the Court has not assumed to define 'liberty' (in the Fifth Amendment's Due Process Clause) with any great precision, that term is not confined to mere freedom from bodily restraint." The court continued: "Yet, while the Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries. For the words 'liberty' and 'property' in the Due Process Clause of the Fourteenth Amendment must be given some meaning."

The court went on with further inspiring words:

19

> While this court has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.' In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed.  (Citations omitted)

In *Zinermon v. Burch*, 494 U.S. 113 (1990) the court faced a mentally disabled person who was asked to sign and did sign, without capacity, a voluntary consent to admission to a state hospital.  The court noted that it would reject a procedural due process claim if the allegation was only that some single official at the hospital had committed some particular random act of misconduct, but it then approved a procedural due process claim where the system itself would likely lead to a pattern of constitutional violations.  The problem was that the system was ignoring the fact that by definition a mentally disabled person cannot sign a voluntary consent to admission form.

The court said:

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.  Parratt v. Taylor,* 451 U.S. 527, 537 (1981); *Carey v. Piphus,* 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property").  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.  Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.  This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

Let us now examine *Albright v. Oliver*, 510 U.S. 266 (1994). In that case an Illinois officer arrested the Plaintiff for selling a substance which looked like an illegal drug. The Prosecuting Attorney later dismissed the charge concluding that the conduct was not an offense under Illinois law. The Court held that the claim against the officer had to be brought under the Fourth Amendment, not the Fourteenth Amendment. The differences between those facts and our facts is that in our facts the act was not a random bad event by a single officer over an interpretation of a law. Here the City engaged in an improper procedure for an improper purpose. Therefore the *Albright* limitation on procedural due process such that a claim for false arrest is limited to a Fourth Amendment claim is inapplicable here.

### Existence of State Law Remedies

Defendants assert at 17 that because there exists a state law tort of malicious prosecution, a "state law remedy", Plaintiff has no 42 U.S.C. 1983 procedural due process claim. This argument was rejected in *Zinermon v. Burch*, 494 U.S. 113, 124-25 (1990):

> Overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983. A plaintiff, for example, may bring a § 1983 action for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes, and despite the fact that there are common-law remedies for trespass and conversion.

Plaintiff also notes that in *Burch* the discussion of the subsequent remedy was generally in the context of situations where it was impractical to have a pre-deprivation remedy, such as where a guard made an error regarding an inmate's property.

Justice Kennedy's concurrence in *Albright* at 285 also discusses this issue, but in a manner favorable to Plaintiff's claim. He wrote, citing *Parratt v. Taylor,* 451 U.S. 527, 536 (1981):

> In the ordinary case where an injury has been caused not by a state law, policy, or procedure, but by a random and unauthorized act that can be remedied by state

law, there is no basis for intervention under § 1983, at least in a suit based on "the Due Process Clause of the Fourteenth Amendment *simpliciter*.

This is not the ordinary case because it was caused by the City's policy and procedure. The existence of a state law remedy of malicious prosecution therefore does not nullify Plaintiff's 42 U.S.C. 1983 procedural due process claim.

### Bootstrapping

Plaintiff notes that the City's "bootstrapping" procedure where it used the red light camera ticket to reach the opportunity to arrest a subject for Failure to Appear, all for an improper financial purpose, supports the idea of a deprivation of proper procedure.

### *Gunderson v. Schlueter*

Defendants cite *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990) where game officer Schlueter had some sort of personal vendetta against resort operator Gunderson.

Schlueter sent agents to fish at Gunderson's resort without fishing licenses and the agents asked Gunderson to back date licenses for the agents, which he did. Schlueter then had agents shoot bears and the agents asked Gunderson to put improper tags on the dead bears, which he did. Schlueter then charged Gunderson with violations of the fishing and hunting laws and Schlueter swore out a complaint before a local judge who found probable cause. Gunderson went to trial was acquitted of all charges.

In Gunderson's 1983 suit for false arrest the Eighth Circuit rejected what it interpreted as a procedural due process argument because, said the court, Gunderson received all the process he was entitled to. Regarding procedural due process the court said:

> Procedural due process prohibits state authorities from depriving a person of life, liberty, or property without conforming to constitutionally required procedures. In this case we find that appropriate procedures were followed.

> As the Supreme Court pointed out in *Baker v. McCollan,* 443 U.S. 137, 145 (1979), the Constitution does not guarantee that criminal charges will be filed only against the guilty.  Rather, the Constitution mandates procedures designed to protect defendants.  In this case the complaint against Gunderson was sworn before a judge who in good faith found probable cause, a finding later confirmed in a pre-trial hearing.  Gunderson was not detained in custody, and his trial followed within an acceptable length of time. These facts simply do not show Gunderson was accorded less process than he was due under the Constitution.

Plaintiff again points out as in the previously discussed cases the allegations in *Gunderson* are different than this case.  Here it was the City's policy to put out an arrest warrant for something which was not against the law and which had an improper purpose whereas there Gunderson had indeed apparently broken the law by backdating the fishing licenses and improperly tagging the bears.  (Undersigned counsel cannot resist mentioning the honor one feels for those jurors who no doubt were horrified by Schlueter's conduct and perhaps for that reason let Gunderson off the hook).

Plaintiff also notes that the *Schlueter* court at n. 4 on p. 409 stated:  We assume but do not decide that Gunderson suffered a constitutional deprivation of liberty by his compelled appearance at his trial.  Plaintiff asks this court to do the same.  *Contra*:  as cited in the footnote: *Nesmith v. Taylor,* 715 F.2d 194, 196 (5th Cir.1983).  Plaintiff notes, however, that the maximum penalty faced by Roeder on the red light camera ticket was a $110.00 fine, but the maximum penalty faced by Roeder on the Failure to Appear charge was, (according to the General Penalty Ordinance, a fine of $500.00 and jail time of 90 days.  The latter is, of course, far more serious than the former and so *Nesmith* should not apply.

### RESPONSE TO DEFENDANTS' ASSERTION THAT PLAINTIFF HAS NO SUBSTANTIVE DUE PROCESS CLAIM

### COUNT IV

### Introduction

In Count IV against Administrator White and the City Plaintiff asserts that those Defendants' prosecution of Plaintiff for conduct which was not illegal violated her right to substantive due process.  Plaintiff agrees that the legal framework is set out in *Luckes v. Cty. of Hennepin, Minn.*, 415 F.3d 936, 939 (8th Cir. 2005) where Plaintiff was arrested on a valid warrant for failure to pay a fine, he normally would have been released within a hour or two, but because of a computer changeover he was held almost 24 hours.  The court wrote:

> We have previously stated that the Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest from unlawful state deprivation
>
> In determining whether extended detention following an arrest pursuant to a valid warrant violates substantive due process, we utilize the framework set forth by the Seventh Circuit in *Armstrong. Hayes,* 388 F.3d at 673. Under this framework, we look to the totality of the circumstances and consider: (1) whether the Due Process Clause prohibits the alleged deprivation of rights; (2) whether the defendants' conduct offended the standards of substantive due process; and (3) whether the totality of the circumstances shocks the conscience.
>
> …
>
> [Whether the conduct shocks the conscience] is a matter of law.

The *Luckes* court found that the length of the stay, while "unfortunate and understandingly upsetting", did not shock the conscience.  The court did note that in *Young v. City of Little Rock,* 249 F.3d 730 (8th Cir.2001) it had found that a one half hour chaining and strip search of an innocent person did shock the conscience.

### More Specific Constitutional Standard

Defendants assert at 18 that Plaintiff's substantive due process claim "for arrest without probable cause" fails because the claim should be brought under the Fourth Amendment.  Defendants misread Count IV.  By its terms it is limited to the prosecution of Plaintiff, not the arrest of Plaintiff.  Plaintiff suggests the court may disregard this argument.

### Shock the Conscience Test

Defendants then assert at 19 that the conduct of Administrator White and the City does not shock the conscience. As indicated above, this is a matter of law.

In *White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012), a false conviction case, this court laid out the test:

> We must now determine whether the district court correctly concluded that Defendants' violations of White's constitutional rights were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8. In order to "shock the conscience," it is not enough that the government official's behavior meets the "lowest common denominator of customary tort liability." *Id.* at 848–49. Rather, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. Only the most severe violations of individual rights that result from the "brutal and inhumane abuse of official power" rise to this level. *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347,* 591 F.3d 624, 634 (8th Cir.2010) (citation omitted).

There is no government interest in prosecuting that which is not a crime. Therefore Plaintiff suggests that the raw seeking of money from red light camera tickets by using the public arrest of a non-responding party to a bootstrapped charge of Failure to Appear, and continuing the prosecution to the conclusion of evidence at which point the Prosecuting Attorney admitted that there was no Ordinance making Failure to Appear an offense, all to use Plaintiff to draw the citizen's attention to the City's intention to get paid on every such ticket, even though the validity of the camera tickets was so tenuous that the City did not have the nerve to issue the warrant for failing to respond in court to the ticket itself, does indeed shock the conscience.

Defendants cite no case for their position and, Plaintiff supposes (fortunately for the public), that the situation is so horrific and bizarre that there is no case directly on point.

Under those circumstances it falls to this court to use its common sense to decide whether the conduct of Defendants shocks the conscience. Plaintiff suggests that the inquiry should be answered in the affirmative.

## RESPONSE TO DEFENDANTS' ASSERTION THAT PLAINTIFF'S STATE LAW MALICIOUS PROSECUTION WAS FILED BEYOND THE STATUTE OF LIMITATIONS

### COUNT V

Plaintiff acknowledges that she filed her state law malicious prosecution claim more than two years after the date of her acquittal of the Failure to Appear charge. Nevertheless, the action against Plaintiff regarding the red light camera ticket, under the same cause number, continued until August of 2015, which date is only three months before Plaintiff filed her suit.

Plaintiff agrees that if the relevant date is the date of the acquittal on the charge of Failure to Appear then Plaintiff's state law malicious prosecution claim is too late. Plaintiff suggests to the court, however, that because the rest of the charge under the same cause number continued, the relevant date is well within the statute. Further, it was the City's choice to appeal the red light camera ticket part of the case, and Plaintiff suggests that the City's conduct thereby tolled the statute.

Plaintiff has found no cases directly on point, but in light of the fact that both the Failure to Appear charge and the red light camera ticket charge were all under one cause number and it was the City's choice to appeal, the appropriate date should be the final conclusion of litigation related to that cause number.

### PRAYER

WHEREFORE, Plaintiff prays the court to deny Defendants' Motion to Dismiss.

Respectfully Submitted,
Co-Counsel for Plaintiff

  /s/ W. Bevis Schock  .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105

wbschock@schocklaw.com
Fax       314-721-1698
Voice: 314-726-2322

  /s/ Hugh A. Eastwood   .
Hugh A. Eastwood, MBE # 62058
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, MO  63105
heastwood@eastwoodlawstl.com
Fax:    314-863-5335
Voice: 314-809-2343

CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2016 the foregoing was filed electronically with the Clerk of
Court to be served by operation of the Court's electronic filing system upon the following:
All counsel of record

  /s/ W. Bevis Schock   .
W. Bevis Schock, 32551MO